UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 00-6219-CR-FERGUSON

MAGISTRATE JUDGE SNOW

UNITED STATES OF AMERICA, :

    Plaintiff, :

v. :

EDMOND AUGUSTIN, :

    Defendant. :
_____/

## SENTENCING MEMORANDUM

Edmond Augustin ("Augustin"), through counsel, respectfully submits the following memorandum of law in support of his objections to the Presentence Investigation Report prepared in this case. The defendant hereby proffers his "Record of Sworn Statement" to the I.N.S. at the time of his arrest as his testimony in support of the reductions requested (attached as Exhibit A).

### DOWNWARD DEPARTURE; SPECIFIC INTENT

This case is unique in that Augustin re-entered the United States without knowing that his reentry was illegal. He showed his "green" card to the I.N.S. official at the airport, gave his real name, and admitted immediately that he had been a convicted felon. The discovery materials in this case reveal that any "advice" that Augustin received about his previous deportation was in the English language; Augustin only speaks Creole (attached as Exhibit B).

This court has the authority to depart in any case not falling within the "'heartland', a set of typical cases embodying the conduct that each guideline describes" which were "carved out" by the Sentencing Commission. U.S.S.G. Introduction, p.6, Ch. 1, Pt. A, § 4(b).

> "When the court finds an atypical case . . . the court may consider whether a departure is authorized . . . the Commission does not intend to limit the kinds of factors, whether or not mentioned elsewhere in the guidelines, that could constitute grounds for the departure in the unusual case." Id. at 5.

Both Congress and the Sentencing Commission agreed there would be times when various factors about a defendant would make a particular sentence inappropriate. Thereafter, both Congress and the Sentencing Commission set out factors which, if substantially different than the normal or "heartland" case should be considered as a basis for a downward departure from the usually appropriate range. U.S.S.G. Introduction, p.6, Ch. 1, Pt. A, § 4(b), and 18 U.S.C. § 3553(b). The guidelines provide:

> The sentencing statute permits a court to depart from a guideline-specific sentence . . . when it finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

The United States Supreme Court addressed the issue of guideline departures in Koon v. United States, 116 S.Ct. 2035 (1996), by clarifying and reemphasizing that sentencing courts have broad discretion to tailor appropriate sentences to the facts of a particular case.

This case is unusual and outside the "heartland" such that a departure is warranted. The law in the Eleventh Circuit is clear. United States v. Peralt-Reyes, 131 F.3d 956 (11th Cir. 1997), established that specific intent is not an element of attempting to reenter the United States after

2

deportation. However, a recent Ninth Circuit case, <u>United States v. Gracidas-Ulibarry</u>, 2000 WL 1664283 (9th Cir. Nov. 7, 2000), holds that attempted reentry after deportation requires a "specific intent" (attached as Exhibit C). The Court reasoned that because this was an "attempt" and not an accomplished act, common law requires proof that the defendant had the specific intent to commit the underlying crime and took some overt act that was a substantial step toward committing that crime. Augustin did no "overt" act towards the completion of this crime. Augustin requests that the reasoning and rationale of <u>Gracidas-Ulibarry</u> be applied to his case as a basis for this downward departure.

### DOWNWARD DEPARTURE; CRIMINAL HISTORY

But for having an "aggravated felony" on his record, Augustin's guideline range would have been a level 6. His criminal history category of III (as a result of 5 criminal history points) would have resulted in a guideline range of 6-12 months. Even though the prior offense was extremely serious, it is his only blemish on an otherwise clean record. Additionally, even though Augustin chose to come back to this country, he is being punished more severely because he chose to come back to the United States within the first two years of his original conviction. For the reasons stated below Augustin specifically asks for a downward departure from his criminal history category of III because it over-represents his propensity to commit crimes.

The sentencing Reform Act allows the sentencing court to depart from the guidelines if "the court finds that there exists a ... mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." 18 U.S.C. § 3553(b). Therefore the sentencing Guidelines permits the district court to depart downward from both a career offender status and criminal history category. See <u>United States v. Lawrence</u>, 916 F.2d 553 (9th Cir. 1990);

United States v. Smith, 909 F.2d 1164 (8th Cir. 1990); United States v Brown, 903 F.2d 540 (8th Cir. 1990); United States v. Maddalena, 893 F.2d 815 (6th cir. 1989); United States v. Bowser, 991 F.2d 10919 (10th Cir. 1991); and United States v. Maldonado-Campos, 920 F.2d 714 (10th Cir. 1990); United States v. Gayles, 1 F.3d 735 (8th Cir. 1993); United States v. Summers, 893 F.2d 63 (4th Cir. 1990); United States v. Senior, 935 F.2d 149 (8th Cir. 1991).

Section 4A1.3 of the Sentencing Guidelines states as a policy statement the following:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure from the guidelines.

In the case of Senior, supra, because of three prior robberies and two controlled substance offenses, prior to the cocaine conviction, Senior qualified as a career offender. His guideline range sentence was 292-365 months and his criminal history category was VI.

The court felt that being a career offender seriously over-represented his criminal history in that the three robberies were treated by the state court as more or less one criminal episode. Additionally, the two controlled substance offenses were committed at age 24 and were consolidated for sentencing. The court departed from the guidelines and imposed the statutory minimum mandatory of 120 months.

Applying these factors to the present case, the Sentencing Guidelines explicitly acknowledge that over-representation of the seriousness of the defendant's criminal history is an appropriate

4

consideration for downward departure. It is specific intent of Augustin to request a downward departure from his criminal history category of III.

WHEREFORE, Edmond Augustin requests that he receive a departure from the applicable guideline range pursuant to these requests.

Respectfully submitted,

KATHLEEN M. WILLIAMS
FEDERAL PUBLIC DEFENDER

By: *[signature]*
Samuel J. Smargon
Assistant Federal Public Defender
Florida Bar No. 150230
101 N.E. 3rd Avenue
Suite 202
Fort Lauderdale, Florida 33301
(954) 356-7436
(954) 356-7556 (fax)

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was mailed on this _14_ day of November, 2000 to Bertha Mitrani, Esquire, United States Attorney's Office, 299 E. Broward Blvd., Fort Lauderdale, Florida 33301 and to Gregory Jenkins, United States Probation Office, 300 N.E. First Avenue, Room 315, Miami, Florida 33132-2126.

*[signature]*
Samuel J. Smargon

S:\SMARGON\Augustin\Sentencing.01

United States Department of Justice
Immigration and Naturalization Service

Record of Sworn Statement

|  |  |  |  |
|---|---|---|---|
| Date: July 20, 2000 | Before: | Emeric Vaswani, II | |
| Office: Ft Lauderdale Int'l Airport | | File No: A# 90 993 566 | |
| Statement By: Edmond AUGUSTIN | | | |
| In the English | language. Interpreter | none | used. |

I am an officer of the United States Immigration and Naturalization Service, authorized by law to administer oaths and take testimony in connection with the enforcement of the Immigration and Nationality laws of the United States of America. I desire to take your sworn statement regarding your application for admission into the United States.

Any statement you make must be given freely and voluntarily and may be used against you, or any other person in Immigration and Naturalization Service Proceedings.

Q. Are you willing to answer my questions at this time?

A. Yes.

Q. Do you swear or affirm that all the statements you are about to make will be the truth, the whole truth, and nothing but the truth?

A. Yes, I swear to God to tell the truth.

Q. What is your full, true and correct name?

A. Edmond AUGUSTIN.

Q. When and where were you born?

A. August 15, 1945 at LaGonave, Haiti.

United States Department of Justice
Immigration and Naturalization Service

Record of Sworn Statement

Q. What is your nationality?

A. I am Haitian.

Q. What is your marital status; single, divorced, married to a USC, married to an LPR, widowed, etc?

A. I am widowed.

Q. Do you have any reason to believe that you are a citizen of the United States?

A. No, I do not.

Q. Where do you currently reside? State your full address and telephone number.

A. I have been living in Port-au-Prince, Haiti. Telephone: 2343176.

Q. How much money do you have with you?

A. I have US One Hundred Dollars ($100.00).

Q. What is your occupation?

A. I do housekeeping and farming.

Q. Where are you currently employed?

A. I have been self-employed.

Q. Have you ever been arrested before, in the US or anywhere?

A. Yes, in Florida about 5 years ago in Lake County, Florida I was arrested and accused of selling cocain I was deported from the United States on January 1, 1999.

Q. Where were you apprehended today?

United States Department of Justice
Immigration and Naturalization Service

Record of Sworn Statement

A. At Ft. Lauderdale Airport in Immigration area.

Q. Who was traveling with you.

A. I am traveling alone.

Q. Do you have anything you would like to add to this statement?

A. I have nothing else to add.

I have read (or have had read to me) the foregoing statement, consisting of _____4_____ pages (including this page). I state that my answers are true and correct to the best of my knowledge and that this statement is a full, true and correct record of my interrogation on the date indicated by the above-named officer of the Immigration and Naturalization Service. I have initialed each page of this statement (and the corrections noted on page(s)_____).

Signature: _Y E) non AU 9( 5Ti/_

Sworn and subscribed to before me at _____Ft Lauderdale Int'l Airport_____
_____ on _____July 20, 2000_____ .

_____ E.Vaswani, II
Officer, United States Immigration and Naturalization Service

Witnessed by: _____ C.Alvarez, SOII

### RECORD OF SWORN STATEMENT

UNITED STATES DEPARTMENT OF JUSTICE
Immigration and Naturalization Service
Form I-263A (Rev. 11-20-63)

The above has been explained to me in the English language, and I understand what it means.

(Witness) _L. Tubins_ (Date) 1/1/99
(Interpreter) None (Date) 1/1/99
(Date) 1/1/99

File No: A90 993 566
Date: October 28, 1998

Alien's full name: AUGUSTIN, Edmond

In accordance with the provisions of section 212(a)(9) of the Immigration and Nationality Act (Act), you are prohibited from entering, attempting to enter, or being in the United States:

☐ For a period of 5 years from the date of your departure from the United States because you have been found inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.

☒ For a period of 10 years from the date of your departure from the United States because you have been found:
  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States in accordance with section 238 of the Act by an immigration officer, a judge of a United States district court, or a magistrate of a United States magistrate court.

☒ For a period of 20 years from the date of your departure from the United States because, after having been previously excluded, deported, or removed from the United States, you have been found:
  ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
  ☐ deportable under section 237 of the Act and ordered removed from the United States in proceedings under section 238 of the Act.
  ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.

At any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section or 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated an aggravated felony.

After your removal has been effected you must request and obtain permission from the Attorney General to reapply for admission to United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or Office of the United States Immigration and Naturalization Service. Refer to the above file number when requesting forms or information.

WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States during the period in which he or she is barred from so doing without the Attorney General's consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000.

Deportation Copy

EXHIBIT B

The above has been explained to me in the _____ language, and I understand

File No: A90 003 566

what it means (Date) 1/1/99

(Witness) (Date) 1/1/99

(Interpreter) (Date)

Alien's full name: AUGUSTIN, Edmond

Notice to be served

Date: October 28, 1998

In accordance with the provisions of section 212(a)(9) of the Immigration and Nationality Act (Act), you are prohibited from entering, attempting to enter, or being in the United States:

☐ For a period of 5 years from the date of your departure from the United States because you have been found inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.

☐ For a period of 10 years from the date of your departure from the United States because you have been found:
 ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
 ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.
 ☐ deportable under section 237 of the Act and ordered removed from the United States in accordance with section 238 of the Act by an immigration officer, a judge of a United States district court, or a magistrate of a United States magistrate court.

For a period of 20 years from the date of your departure from the United States because, after having been previously excluded, deported, or removed from the United States, you have been found:
 ☐ inadmissible under section 212 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
 ☐ deportable under section 237 of the Act and ordered removed from the United States by an immigration judge in proceedings under section 240 of the Act.
 ☐ deportable under section 237 of the Act and ordered removed from the United States in proceedings under section 238 of the Act.
 ☐ deportable under section 241 of the Act and ordered deported from the United States by an immigration judge in proceedings commenced before April 1, 1997 under section 242 of the Act.

At any time because you have been found inadmissible or excludable under section 212 of the Act, or deportable under section 237 of the Act, and ordered deported or removed from the United States, and you have been convicted of a crime designated as an aggravated felony.

After your removal has been effected you must request and obtain permission from the Attorney General to reapply for admission to the United States during the period indicated. You must obtain such permission before commencing your travel to the United States. Application forms for requesting permission to reapply for admission may be obtained by contacting any United States Consulate or Office of the United States Immigration and Naturalization Service. Refer to the above file number when requesting forms or information.

WARNING: Title 8 United States Code, Section 1326 provides that it is a crime for an alien who has been removed from the United States to enter, attempt to enter, or be found in the United States during the period in which he or she is barred from so doing without the Attorney General's consent. Any alien who violates this section of law is subject to prosecution for a felony. Depending on the circumstances of the removal, conviction could result in a sentence of imprisonment for a period of from 2 to 20 years and/or a fine of up to $250,000.

W.L. Williams K-34            Deportation Copy            Miami, Florida
                              IDEA
(Signature of officer serving warning)    (Title of officer)    (Location of INS officer)

2000 WL 1664283
(Cite as: 2000 WL 1664283 (9th Cir.(Cal.)))
H

Page 1

Only the Westlaw citation is currently available.

United States Court of Appeals,
Ninth Circuit.

UNITED STATES of America, Plaintiff-Appellee,
v.
Alfredo GRACIDAS-ULIBARRY, Defendant-
Appellant.

No. 98-50610.

Argued and Submitted En Banc June 20, 2000
Filed Nov. 7, 2000

Steven F. Hubachek, Julie A. Blair, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Roger W. Haines, Assistant United States Attorney, Larry A. Sebastian, Special Assistant United States Attorney, Criminal Division, San Diego, California, for the plaintiff-appellee.

Appeal from the United States District Court for the Southern District of California; Howard B. Turrentine, Senior District Judge, Presiding. D.C. No. CR-98-00254-HBT.

Before: HUG, CHIEF JUDGE, PREGERSON, REINHARDT, FERNANDEZ, T.G. NELSON, KLEINFELD, THOMAS, GRABER, W. FLETCHER, FISHER and PAEZ, Circuit Judges.

Opinion by Judge FISHER; Concurrnece by Judge FERNANDEZ.

FISHER, Circuit Judge:

*1 Under 8 U.S.C. § 1326, a previously deported alien who "enters, attempts to enter, or is at any time found in" the United States without the express consent of the Attorney General is subject to a fine and imprisonment for up to two years. [FN1] In Pena-Cabanillas v. United States, 394 F.2d 785, 788-90 (9th Cir.1968), we held that illegal reentry into the United States under § 1326 required only a showing of general intent because it was a malum prohibitum regulatory offense and the statute did not otherwise specify an intent requirement for that crime. [FN2] The question posed by this case, however, is what level of intent must the government prove to convict an alien of attempted illegal reentry under § 1326?

The statutory language for the crime of attempted illegal reentry differs from the language used for an accomplished illegal reentry, because "attempt" is a term that at common law requires proof that the defendant had the specific intent to commit the underlying crime and took some overt act that was a substantial step toward committing that crime. See, e.g., United States v. Arbelaez, 812 F.2d 530, 534 (9th Cir.1987). Because we must assume Congress intended to incorporate the well-established common law meaning of "attempt" into § 1326 absent a contrary statutory command, we conclude the crime of attempted illegal reentry into the United States includes the common law element of specific intent.

FACTUAL and PROCEDURAL BACKGROUND

On the morning after he was deported from the Calexico, California, port of entry, Alfredo Gracidas-Ulibarry ("Gracidas") was discovered riding as a passenger in the back seat of a car being driven through the border checkpoint at the San Ysidro, California, port of entry. [FN3] At primary inspection, an immigration inspector asked Gracidas about his citizenship, to which he replied that he was a United States citizen. When, upon further questioning, Gracidas failed to produce identification or to explain how he became a citizen, the inspector became suspicious and referred the car and its occupants to secondary inspection.

At secondary inspection, Gracidas again claimed he was a United States citizen, born in Texas, and gave his name as "Arturo Cabral-Rodriguez." Gracidas said he did not have any identification because his wallet had been stolen two weeks earlier. After an inspector ran several computer checks and informed Gracidas that the computer listed several possible convictions for "Arturo Cabral-Rodriguez," Gracidas admitted he was a Mexican citizen and had been previously deported. The inspectors referred Gracidas to an Immigration and Naturalization Service ("INS") prosecution unit, which ran further computer checks and fingerprint comparisons revealing Gracidas' true identity and that he had been deported just the previous day after having served two years in prison for a felony conviction for sale of a controlled substance.

After being advised of his Miranda rights and deciding to answer questions without the assistance of counsel, Gracidas admitted to the inspectors his true name and that he had given a false name at secondary

r-06219-WDF    Document 20    Entered on FLSD Docket 11/16/2000    Pa
2000 WL 1664283                                                                                                Page 2
(Cite as: 2000 WL 1664283, *1 (9th Cir.(Cal.)))

inspection. Gracidas further confirmed his Mexican citizenship, his deportation the previous day and his prison record. He also admitted knowing that he needed to ask the U.S. government for permission to apply to reenter the United States, but claimed he did not do so because he was urgently wanted to see his child, who resides in the United States.

*2 Gracidas was charged with attempted illegal reentry in violation of 8 U.S.C. § 1326, and with falsely and willfully representing himself as a citizen of the United States in violation of 18 U.S.C. § 911. [FN4] At trial, Gracidas contended he was asleep when he was driven to the port of entry and thus he never formed the specific intent to reenter the United States illegally. Accordingly, he requested a jury instruction that would have allowed the jury to find him guilty only if it concluded beyond a reasonable doubt that Gracidas "intended to reenter the United States without the consent of the Immigration and Naturalization Service." [FN5] The district court rejected the requested instruction and instead instructed the jury that it should convict Gracidas if it found that he "attempted to reenter the United States on or about December 5, 1997," and did not have the requisite permission of the Attorney General. The jury convicted Gracidas on both counts and, on appeal, a majority of a three-member panel of this court upheld the district court's instruction, holding that illegal attempt to reenter under § 1326 requires proof only of general intent. See United States v. Gracidas-Ulibarry, 192 F.3d 926, 929-30 (9th Cir.1999).

Having reheard this case en banc, and reviewing de novo whether the jury instruction misstated an element of the statutory crime, see United States v. Gergen, 172 F.3d 719, 724 (9th Cir.1999), we now conclude that the district court's instruction was erroneous. We hold that the attempt prong of § 1326 incorporates the well-established common law meaning of "attempt" and requires proof of a specific intent to enter illegally. We further conclude, however, that the erroneous instruction was harmless because uncontradicted and overwhelming evidence demonstrated that Gracidas intended to enter the United States without the express consent of the Attorney General. [FN6]

DISCUSSION
I. Whether Attempted Illegal Reentry Under 8 U.S.C. § 1326 is a General or Specific Intent Crime
A. The Common Law Background of the Term "Attempt"

The common law meaning of "attempt" is the specific intent to "engage in criminal conduct and ... an overt act which is a substantial step towards committing the crime." Arbelaez, 812 F.2d at 534 (9th Cir.1987); accord United States v. Bailey, 444 U.S. 394, 405, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980); Wooldridge v. United States, 237 F. 775, 778-79 (9th Cir.1916) (collecting common law sources "holding that, to constitute an attempt, there must be the intent to commit a crime and some act done toward its consummation, and that the term 'attempt' signifies both an act and the intent with which it is done"); Model Penal Code & Commentaries § 5.01 cmt. at 305 (1985) (noting that Code's definition of attempt "retains the common law requirement of purposive conduct [the Code's term for specific intent] as a prerequisite for attempt liability"); Black's Law Dictionary 123-24 (7th ed. 1999) (" 'Every attempt is an act done with intent to commit the offence so attempted.' ") (quoting John Salmond, Jurisprudence 387 (Glanville L. Williams ed., 10th ed.1947)); 2 Wayne R. LaFave & Austin W. Scott, Jr., Substantive Criminal Law § 6.2, at 18 (1986) ("The crime of attempt ... [at] common law ... consists of: (1) an intent to do an act or to bring about certain consequences which would in law amount to a crime; and (2) an act in furtherance of that intent which ... goes beyond mere preparation."); Rollin M. Perkins & Ronald N. Boyce, Criminal Law § 3.A.7, at 637 (3d ed. 1982) ("[A]n attempt to commit any crime requires a specific intent to commit that particular offense."); 4 Charles E. Torcia, Wharton's Criminal Law § 693, at 580 (15th ed. 1996) ("At common law, a person commits an attempt when, with intent to commit a particular crime, he performs an act which tends toward but falls short of consummation of such crime."). This accepted common law definition is the basis for the doctrine that the crime of attempt requires a showing of " 'specific intent even if the crime attempted does not.' " United States v. Hadley, 918 F.2d 848, 853 (9th Cir.1990) (quoting United States v. Sneezer, 900 F.2d 177, 179 (9th Cir.1990)); accord 4 Torcia, supra, § 695, at 591-97.

Accordingly, we have held that Congress' use of the term "attempts" in a criminal statute manifested a requirement of specific intent to commit the crime attempted, even when the statute did not contain an explicit intent requirement. For example, we held in Sneezer that a conviction for attempted sexual abuse under 18 U.S.C. § 2242--which imposes a prison sentence of up to 20 years upon one who knowingly causes another to engage in a sexual act against his or

her will "or attempts to do so"--required a finding of specific intent to commit the crime even though the statute "itself d[id] not appear to include any element of specific intent." 900 F.2d at 179; accord Hadley, 918 F.2d at 853 (holding that attempted aggravated sexual abuse under 18 U.S.C. § 2241, which imposes a penalty upon one who uses force or threat to cause another to engage in a sexual act "or attempts to do so," required a showing of specific intent even though the statute contained no express intent requirement); Wooldridge, 237 F. at 776, 778-79 (construing statute imposing a criminal penalty if any person "attempts to commit any crime, ... when no other provision is made by law for the punishment of such attempt," to require specific intent) (emphasis added) (internal quotation marks and citation omitted). Similarly, in United States v. Darby, 857 F.2d 623 (9th Cir.1988), we held that attempted bank robbery requires the specific intent to rob a bank within the meaning of 18 U.S.C. § 2113(a), which provides that one who by force "takes, or attempts to take" money from a bank may be imprisoned up to 20 years, even though bank robbery itself is a general intent crime. See 857 F.2d at 626.

*3 The reason for requiring specific intent for attempt crimes is to resolve the uncertainty whether the defendant's purpose was indeed to engage in criminal, rather than innocent, conduct. See Bailey, 444 U.S. at 405; United States v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir.1997). This uncertainty is not present when the defendant has completed the underlying crime, because the completed act is itself culpable conduct. When the defendant's conduct does not constitute a completed criminal act, however, a heightened intent requirement is necessary to ensure that the conduct is truly culpable. [FN7] See Sneezer, 900 F.2d at 180.

B. Whether Congress Intended to Incorporate the Common Law Meaning of "Attempt" into Attempted Illegal Reentry Under 8 U.S.C. § 1326

In determining the level of mental culpability required for a particular statutory offense, we must first look to the intent of Congress. See Bailey, 444 U.S. at 406. Although Congress did not include an explicit intent requirement for the crime of illegal attempt to reenter in § 1326, the term "attempts" implies the common law meaning that includes specific intent. When Congress has used a term that has a settled common law meaning, " 'a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning' " of that term. Neder v. United States, 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (quoting Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 322, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)); accord Morissette v. United States, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952); Standard Oil Co. v. United States, 221 U.S. 1, 59, 31 S.Ct. 502, 55 L.Ed. 619 (1911).

Neither the text of § 1326 nor its legislative history gives any indication that Congress intended not to incorporate the common law meaning of the term "attempts" into the crime of attempted illegal reentry. See 8 U.S.C. § 1326; H.R.Rep. No. 82-1365 (1952), reprinted in 1952 U.S.C.C.A.N. 1653, 1723-24; see also Pena-Cabanillas, 394 F.2d at 788-89 (noting that the legislative history of § 1326 is "barren" on the issue of intent). Accordingly, we conclude Congress intended an attempted reentry under § 1326 to be a crime of specific intent. Cf. Neder, 527 U.S. at 22 (holding that use of term "defraud" in 18 U.S.C. §§ 1341, 1343 and 1344 demonstrated congressional intent to incorporate the requirement of materiality from common law meaning of fraud); Evans v. United States, 504 U.S. 255, 268-69, 112 S.Ct. 1881, 119 L.Ed.2d 57 (1992) (holding that Congress' use of term "extortion" in 18 U.S.C. § 1951 incorporated common law meaning of the term into the statute).

*4 Congress may have had good reason to incorporate the common law meaning of attempt into the crime of attempted illegal reentry under § 1326. On the face of it, the common law justification for requiring specific intent for an attempt crime appears applicable to attempted illegal reentry; otherwise, lawful conduct could be swept within the proscription of the statute. For example, a person who has been deported from the United States is authorized, within a specified period after deportation, to request permission at a port of entry to reapply for admission into the United States. See 8 C.F.R. § 212.2(f). Moreover, certain forms for waivers from the Attorney General to allow deported persons to return lawfully to the United States are located and processed at ports of entry. See, e.g., 8 C.F.R. §§ 210.2(c), 210.3(e)(2), 211.1(b)(3), 212.1(g), 212.4(b), 212.10; 22 C.F.R. § 41.2(j). If attempted illegal reentry were a general intent crime, a previously deported alien intercepted on the way to, or even at, the port of entry to make such a request or to pick up the forms could be prosecuted under § 1326. True, the alien could try to explain that his or her intent was to comply with the law, not violate it; but the government would not have to prove beyond a reasonable doubt that the alien's true purpose was to

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

2000 WL 1664283 Page 4
(Cite as: 2000 WL 1664283, *4 (9th Cir.(Cal.)))

break the law.

These concerns are not merely hypothetical. In United States v. Morales-Tovar, 37 F.Supp.2d 846 (W.D.Tex.1999), the defendant entered a port of entry, presented his Mexican birth certificate and asked to reapply for a resident alien card. There was no evidence that he actually applied for admission into the United States. See id. at 849. Nevertheless, the government arrested him under § 1326, and argued at trial his actions constituted an attempt to reenter illegally because he had lost his permanent resident status when he was deported two years earlier and was told he needed to obtain permission from the Attorney General to reenter within the next 20 years. The defendant argued he was merely following the legal eprocedure for applying for a waiver to obtain a new resident alien card so he could reenter lawfully. The Morales-Tovar court, finding the explanations equally plausible, held the government failed to demonstrate beyond a reasonable doubt that the defendant had the specific intent to reenter illegally. See id. at 852-53. The court concluded that a showing of specific intent was required because, otherwise, "any proactive attempt to follow th[e] legally sanctioned procedure" for seeking permission to reapply to reenter the United States would "actually be [an] illegal 'attempt' to reenter." Id. at 851.

The government, however, argues that the common law doctrine of attempt does not apply to this statutory crime. Instead, it relies on our conclusion in Pena-Cabanillas that actual, illegal reentry is a crime of general intent. It also invokes our reasoning in Pena-Cabanillas that § 1326 provides for a malum prohibitum offense, and includes no explicit language as to intent whereas Congress included explicit intent requirements in other sections of the Immigration and Nationality Act of 1952 that enacted § 1326. [FN8] Unlike its use of the term "enters" in § 1326 for the crime of illegal reentry, however, Congress' use of the term "attempts" does not reflect silence as to intent but is consistent with a purpose to "adopt[ ] the cluster of ideas that were attached to [the] borrowed word in the body of learning from which it was taken." Morissette, 342 U.S. at 263. This principle applies regardless of whether the mental culpability requirement of the crime attempted is general intent or mala prohibita strict liability. See 2 LaFave & Scott, supra, § 6.2(c)(3), at 28 ("[T]here is no such thing as strict liability attempt.... An attempt to commit a strict liability offense is ... possible only if it is shown that the defendant acted with an intent to bring about the proscribed result."). Thus, Pena-Cabanillas and the decisions by this court and other circuits holding that only general intent is required for the crime of illegal reentry into or being found in the United States under 8 U.S.C. § 1326 are inapposite. [FN9]

*5 The only other circuit to address, in a published opinion binding in its own courts, the level of intent required for the crime of attempted illegal reentry is the Eleventh Circuit, which held in United States v. Peralt-Reyes, 131 F.3d 956 (11th Cir.1997), that attempted illegal reentry is a general intent crime. [FN10] However, the Peralt-Reyes opinion provides no analysis other than the court's adoption of the holding of an unpublished First Circuit decision which has no precedential value. See id. at 957 (citing and adopting the holding of United States v. Reyes-Medina, No. 94-1923, 1995 WL 247343 (1st Cir. Apr.25, 1995)). The unpublished First Circuit decision, in turn, did not analyze attempted illegal reentry in § 1326 as a separate crime, but rather relied solely on cases holding that illegal reentry is a general intent crime and assumed they apply to attempted illegal reentry. See Reyes-Medina, 1995 WL 247343, at *1 (relying on cases cited above in note 5).

We find these decisions unpersuasive. They do not consider the common law meaning of the term "attempt." Nor do they provide any reason for concluding Congress intended not to incorporate the common law meaning of the term into 8 U.S.C. § 1326.

Our conclusion is consistent with our recent decision in Blanco-Gallegos. In Blanco-Gallegos, the defendant argued he did not have the requisite intent for attempted illegal reentry under 8 U.S.C. § 1326 because he had become voluntarily intoxicated and accidentally walked into the port of entry. See 188 F.3d at 1074. Significantly, we considered this defense on its merits and concluded the jury properly rejected it as unsubstantiated. See id. at 1076. In so doing, we implicitly recognized that attempted illegal reentry is a specific intent crime, because voluntary intoxication is a defense only for such crimes. See United States v. Burdeau, 168 F.3d 352, 356 (9th Cir.1999); Sayetsitty, 107 F.3d at 1411.

C. The Meaning of "Specific" Intent As an Element of Attempt to Reenter Illegally Under 8 U.S.C. § 1326

*6 Having concluded that attempted illegal reentry is a crime of specific intent, an explanation of the meaning of specific intent is necessary to give

guidance as to the proper jury instruction for this crime. As the Supreme Court has noted, the distinction between specific intent and general intent "has been the source of a good deal of confusion." Bailey, 444 U.S. at 403. The practical difference between these two levels of mental culpability is that certain defenses, such as voluntary intoxication and subjective mistake of fact, can negate culpability only for specific intent crimes. See, e.g., Burdeau, 168 F.3d at 358 (voluntary intoxication); United States v. Leon-Leon, 35 F.3d 1428, 1432-33 (9th Cir.1994) (holding that mistake of fact as to permission to reenter the United States is not a defense to general intent crime of illegal reentry under 8 U.S.C. § 1326); 1 LaFave & Scott, supra, §§ 3.5(e), 4.10(a), 5.1(b), at 315, 552-53, 577-79. [FN11]

The confusion between general and specific intent has been the catalyst for a movement to replace these categories with a hierarchy of four levels of culpable states of mind, defined with greater clarity: purpose, knowledge, recklessness and negligence. See Bailey, 444 U.S. at 404; Model Penal Code & Commentaries, supra, § 2.02, at 225-26; see also 1 LaFave & Scott, supra, § 3.4(c), at 299-300. This movement is best exemplified in the Model Penal Code, which the Supreme Court has relied upon as a "source of guidance ... to illuminate" the meaning of and distinctions between intent requirements. United States v. United States Gypsum Co., 438 U.S. 422, 444, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978). In general, "purpose" corresponds to the concept of specific intent, while "knowledge" corresponds to general intent. See Bailey, 444 U.S. at 405; Model Penal Code & Commentaries, supra, § 2.02 cmt. at 233-34. A person who causes a result prohibited by common law or statute is said to have acted purposely if he or she consciously desired that result, whatever the likelihood of that result ensuing from his or her actions. See Bailey, 444 U.S. at 404; United States Gypsum, 438 U.S. at 444; Model Penal Code & Commentaries, supra, § 2.02, at 225.

Applying these principles to the present case, we hold the elements of the crime of attempted illegal reentry into the United States under 8 U.S.C. § 1326 are: (1) the defendant had the purpose, i.e., conscious desire, to reenter the United States without the express consent of the Attorney General; (2) the defendant committed an overt act that was a substantial step towards reentering without that consent; (3) the defendant was not a citizen of the United States; (4) the defendant had previously been lawfully denied admission, excluded, deported or removed from the United States; and (5) the Attorney General had not consented to the defendant's attempted reentry. See United States v. Davis, 960 F.2d 820, 826-27 (9th Cir.1992) (enumerating the elements of attempt); Arbelaez, 812 F.2d at 534 (same); Model Penal Code & Commentaries, supra, § 5.01 cmt. at 301 ("The general principle is thus that the actor must affirmatively desire to engage in the conduct or to cause the result that will constitute the principal offense."); see also United States v. Sotelo, 109 F.3d 1446, 1447 (9th Cir.1997) (concluding that a lawful prior deportation is element of crime of illegal reentry under 8 U.S.C. § 1326).

*7 We conclude the district court committed constitutional error by failing to instruct the jury on the specific intent element of the crime. See United States v. Fei Lin, 139 F.3d 1303, 1309 (9th Cir.1998) (holding that failure to instruct as to specific intent is constitutional error); Martinez v. Borg, 937 F.2d 422, 423 (9th Cir.1991); see also United States v. Gaudin, 515 U.S. 506, 510, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (concluding that Due Process Clause and Sixth Amendment require criminal convictions to rest upon a jury determination that a defendant is guilty of every element of the crime beyond a reasonable doubt). The district court merely required the jury to find that Gracidas "attempted to reenter the United States" without defining "attempted" and without instructing the jury to make any finding as to intent. [FN12] An appropriate instruction would have required the jury to find beyond a reasonable doubt that Gracidas satisfied each of the five elements enumerated above. Accordingly, Gracidas' conviction for attempted illegal reentry must be reversed unless the error was harmless beyond a reasonable doubt. See Neder, 527 U.S. at 15.

II. Harmless Error

The district court's failure to instruct the jury on the intent element of the offense was harmless error if we conclude that it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." Neder, 527 U.S. at 18; see also Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (concluding an error is harmless when it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained"). In Neder, the Supreme Court held that the omission of an element of a crime from a jury instruction was harmless error when the omitted element was uncontested and supported by overwhelming evidence. See 527 U.S. at

17. Similarly, in this case the government offered undisputed testimony by three INS inspectors who dealt with Gracidas at the San Ysidro port of entry that demonstrated his conscious desire to enter the United States without first obtaining express consent.

The INS inspectors testified that Gracidas admitted that he had lied about being a U.S. citizen, that he gave INS inspectors a false name and that he had recently been deported after serving a sentence in the United States for a felony. Significantly, Gracidas admitted he had not asked the U.S. government for permission to reenter because he wanted to see his child, who was living in the United States, as soon as possible. The government also produced a certificate of nonexistence of record based on Gracidas' INS A-file to demonstrate that Gracidas was deported the day before he attempted to reenter and had not applied for permission to reenter. See Blanco-Gallegos, 188 F.3d at 1075 (holding that certificate of nonexistence of record from INS A-file is sufficient evidence to demonstrate the defendant did not seek permission to reapply to reenter the U.S.). Gracidas did not call any witnesses to contradict any of the government's evidence. In the absence of any evidence to the contrary, the government's evidence is so overwhelming as to leave it beyond a reasonable doubt that the verdict resting on the erroneous instruction would have been the same in the absence of the error. See Yates v. Evatt, 500 U.S. 391, 405, 111 S.Ct. 1884, 114 L.Ed.2d 432 (1991); United States v. Manuel, 706 F.2d 908, 915 (9th Cir.1983) (holding that district court's erroneous jury instruction was harmless because uncontradicted evidence supported the conviction).

*8 Gracidas' defense, that he did not have specific intent because he was asleep when the car was driven to the port of entry, does not undermine this conclusion. Gracidas did not support this defense with any evidence, and the INS inspector at primary inspection testified that Gracidas was awake when the inspector questioned him. See Neder, 527 U.S. at 19 (concluding that error would not be harmless if "the defendant contested the omitted element and raised evidence sufficient to support a contrary finding") (emphasis added). Gracidas' defense is contradicted by overwhelming evidence, including his own admission that he purposely declined to ask for permission to reapply for entry because he wanted to see his child in the United States without delay. More importantly, Gracidas certainly was awake when he admittedly misrepresented his name and citizenship to the INS inspectors. We therefore conclude the district court's failure to instruct the jury as to specific intent was harmless beyond a reasonable doubt.

## CONCLUSION

We hold that a conviction for attempt to reenter the United States without the consent of the Attorney General under 8 U.S.C. § 1326 requires a finding that the defendant consciously desired to reenter the United States without consent. Thus, we conclude the district court committed constitutional error when it failed to instruct the jury as to specific intent. However, we hold this error was harmless beyond a reasonable doubt because the overwhelming and uncontested evidence demonstrated that Gracidas did consciously desire to reenter the United States without consent. Finally, we adopt the original panel's conclusions that the evidence was sufficient to support Gracidas' § 1326 conviction, that the district court erred by failing to decrease Gracidas' offense level by a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b)(1) and that the district court did not err by applying U.S.S.G. § 2L1.2 to Gracidas' sentence under § 1326.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED for further proceedings consistent with this opinion.

FERNANDEZ, Circuit Judge, concurring:

*9 Because I agree with the persuasive reasoning of the majority opinion in United States v. Gracidas-Ulibarry, 192 F.3d 926 (9th Cir.1999), which I now adopt, I concur in the result.

FN1. 8 U.S.C. § 1326(a) provides, as relevant here:
[A]ny alien who-- (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless
(A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than 2 years, or both.

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works

FN2. A malum prohibitum act is defined as one "that is a crime merely because it is prohibited by statute, although the act itself is not necessarily immoral." Black's Law Dictionary 971 (7th ed.1999).

FN3. Even though the port of entry was located in the United States, Gracidas had not yet reentered. An alien does not reenter, and cannot be considered found in, the United States until he or she is physically present in the country and free from official restraint. See United States v. Pacheco-Medina, 212 F.3d 1162, 1166 (9th Cir.2000).

FN4. Gracidas does not appeal his conviction under 18 U.S.C. § 911.

FN5. The INS has delegated authority under 8 C.F.R. § 2.1.

FN6. We adopt and thus reinstate the panel's conclusions that the evidence was sufficient to support Gracidas' § 1326 conviction, that the district court erred by failing to decrease Gracidas' offense level by a third point for acceptance of responsibility under U.S. Sentencing Guidelines Manual § 3E1.1(b)(1), and that the district court did not err in applying U.S.S.G. § 2L1.2 to Gracidas' sentence under § 1326. See Gracidas-Ulibarry, 192 F.3d at 928, 931.

FN7. Even when Congress has not used a common law term having an implicit level of intent, a court will read into a statute at least a level of intent or scienter necessary to separate wrongful from innocent conduct, see United States v. Carter, --- U.S. ----, ----, 120 S.Ct. 2159, 2169, 147 L.Ed.2d 203 (2000), mala prohibita regulatory offenses being an exception. See United States v. Staples, 511 U.S. 600, 606, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994); Bailey, 444 U.S. at 404 n. 4; Pena- Cabanillas, 394 F.2d at 788. Here, of course, § 1326 does use the well-established common law term, "attempts."

FN8. We noted in Pena-Cabanillas that 8 U.S.C. §§ 1287, 1306, 1324, 1325 and 1328 each used terms such as "knowingly," "wilfully," "unlawful intent" and "purpose," which explicitly indicated specific intent was required, while 8 U.S.C. §§ 1306(b), 1306(c), 1321, 1322, 1323 and 1326 did not. 394 F.2d at 789 n. 4. Pena-Cabanillas did not, however, address the intent requirement for § 1326 attempts.

FN9. See, e.g., United States v. Martus, 138 F.3d 95, 97 (2d Cir.1998) (illegal reentry); United States v. Martinez-Morel, 118 F.3d 710, 713 (10th Cir.1997) (same); United States v. Henry, 111 F.3d 111, 113-14 (11th Cir 1997) (same); United States v. Trevino-Martinez, 86 F.3d 65, 68 (5th Cir.1996) (same); United States v. Leon-Leon, 35 F.3d 1428, 1432-33 (9th Cir.1994) (same); United States v. Ayala, 35 F.3d 423, 426 (9th Cir.1994) (found in the United States); United States v. Espinoza-Leon, 873 F.2d 743, 746 (4th Cir.1989) (same); United States v. Hernandez, 693 F.2d 996, 1000 (10th Cir.1982) (illegal reentry); United States v. Newton, 677 F.2d 16, 16-17 (2d Cir.1982) (found in the United States); United States v. Hussein, 675 F.2d 114, 115-16 (6th Cir.1982) (illegal reentry); but cf. United States v. Anton, 683 F.2d 1011, 1017 (7th Cir.1982) (holding that specific intent is required for illegal reentry under 8 U.S.C. § 1326).

FN10. In United States v. Cardenas-Alvarez, 987 F.2d 1129, 1131- 33 (5th Cir.1993), the Fifth Circuit reviewed for sufficiency of the evidence a conviction for attempted illegal reentry. The court concluded there was sufficient evidence to sustain the jury's conclusion that the defendant intended to reenter illegally. See id. at 1132. However, the court did not specifically address the issue whether attempted reentry requires general or specific intent.

FN11. As we recognized in Pena-Cabanillas, however, "[e]ven in a crime requiring no specific intent, a defendant may defend upon the ground that he did no voluntary act: that he was asleep or unconscious at the time an act occurred." 394 F.2d at 788 n. 2; see also Carter, --- U.S. at ----, 120 S.Ct. at 2169 (noting that sleepwalking would be a defense to 18 U.S.C. § 2113(a) even if it were a general intent crime).

FN12. Gracidas requested the following jury instruction:
First, the defendant intended to reenter the United States without the consent of the Immigration and Nationalization Service; Second, the defendant did something which was a substantial step towards committing the crime; Third, the defendant is not a citizen or national of the United States; Fourth, the defendant was lawfully deported from the United States; Fifth, the defendant attempted to reenter the United States without the consent of the Immigration and Naturalization Service.

END OF DOCUMENT

Copr. © West 2000 No Claim to Orig. U.S. Govt. Works